Let me say something. Yes. Are you able to hear? Yes. Okay, good. Whenever you're ready, we're ready for you to start. May it please the Court, I'm Judith Wood representing Mr. Franco. There are two issues in this case. The first is whether or not the judge followed the correct procedure in determining that there was a particularly serious crime conviction. And the second is whether the rules regarding withholding of removal were followed. There's a recent case, Barajas, which says, as far as the second argument, that it has to be one ground for withholding. And I think that that case came after this judge, and I know, that the Barajas decision came after this case. And the judge found that he couldn't find a central reason for the persecution. Although he did go through the facts, in this case, the family of the respondent had been disappeared, tortured, raped, on and on, a whole litany of horrors that occurred in Mexico. And while the judge took some sympathy with that, he found that even though family was a protected ground, that it was not tethered enough, that was his word, tethered enough sufficiently to find a nexus, because it wasn't one central reason. But, according to Barajas, it only has to be a reason. So what happened in this case, the respondent had been very young when he suffered a conviction for firing a firearm into the air. He aimed at the sky. Well, that's what he said, that he aimed at the sky. But the judgment said he was guilty of assault on a police officer, and the information names a particular person. So I understand he said that, but how can you get convicted of assault with a deadly weapon on a particular person by firing a gun in the air? Well, that's what he pled to. Those were the charges. Let me, forgive me for interrupting, but I didn't see in the record, but it presumably is public record, what he said at the time he entered his plea. It was a no low contender of plea, so he may have said very little. But did he say anything about, at that time, about firing the gun into the air? We have him giving that statement at a later point. But the point that I think Judge Bennett is getting at is, is that something he said at the time, or is this just something that he's coming up with subsequently, which would not, I think, inform our determination of whether it was a particularly serious offense. I understand, Your Honor. To my knowledge, he just entered a plea. He did not give any testimony during his criminal case. He wasn't asked by the judge for his expo. The only reason he wouldn't be would be because it was a no low contender. Right, and it was a plea bargain situation. Well, he said that. I mean, I understand he said that, and I've looked at the plea form, which says it was the lesser, but the judgment said it was the greater. Your opening brief says it was the greater. His asylum application said it was the greater, and the credible fear interview said it was the greater. So, I mean, why isn't the judgment what controls here, where it says that he got the minimum term of four years for the assault on a police officer when the minimum term you can get for that is four years? Well, to my knowledge, he entered a plea in order to avoid further charges. I was not his attorney at the criminal case, but as far as I know, he pled. I have been a public defender, so I do know that oftentimes a plea bargain is entered into before there's a trial. No, I understand that. But, I mean, every document except the plea form, including your opening brief, says that what he was convicted of, I'm reading from your opening brief, 245D1, assault with a firearm on a peace officer. I mean, that's what you said in the blue brief. That's what the judgment said. And the minimum sentence for that crime is four years, and he got four years. Well, what the respondent testified to was that they were going to charge him with something more serious than that. That was his understanding. Oh, that he was even going to be charged with something more serious than assault on a police officer? Perhaps so, yes, Your Honor. Okay. May I continue? So the thing is that this person has not committed any other crimes. This happened more than 20 years ago. According to him, and the judge did find him credible, he just fired this gun into the sky to defend himself. There was some sort of altercation on the street. He was 19 or 20 years old. And then a series of tragic incidents followed. He was deported. He did not follow through on an appeal. He left and went to Mexico. He came back to see his family. He got married. He's been stably married for many years. He's been the stepfather of three children. He has never committed or been convicted of another crime. And then recently, more recently, when he went to Mexico, when he was in Mexico, he was not harmed. He was very honest. The judge found him totally credible. But then when he came back to the United States, he learned that numerous members of his family had been tortured, raped, murdered, disappeared, on and on. And, in fact, the respondent was threatened on the phone. He received a phone call, and another relative received the phone call, wanting to get some sort of ransom for a relative. And the respondent is afraid that if he goes back to Mexico, he, in fact, will suffer the same fate that his family suffered. Now, his family are all farmers. They have land in Mexico. And in Mexico, the land is very precious because, as you know, there are drug cartels. The main culprit in this case is the Zetas, who operates a big, big, big cartel, and it operates in Zacatecas, Mexico. And it has control of the entire area. They seize land and force the farmers to grow opium, grow marijuana, grow whatever it is, contraband that they want them to grow. And his family are subject to this type of threat. Therefore, he has a well-founded fear of persecution. He can't just go to a different part of Mexico where the Zetas don't control things? Well, actually, the Zetas have grown. Their territories have grown. They're all over Mexico now. And we submitted numerous publications and documents to show how powerful and how widespread they are. So as far as I can see, this respondent is not safe in any part of Mexico. Now, his family members did testify that one of them went back to Tijuana, but only for a night, went to visit, maybe to go shopping. That's not the same as living there. Yeah, but he at least at some, I can't remember, it's quite a while ago now, he did live in Mexico for two years in a different part of Mexico and did not suffer any harm? That is true, Your Honor. When he was deported, he lived in Juarez, Ciudad Juarez, where he was able to stay with a friend of a relative for two years. However, life was not safe there either, and the documents show, the documents that were submitted, that life in Juarez is, in fact, quite dangerous. The cartels have taken over the city. In fact, U.S. consular officers have been killed in Juarez. Yes, but any fear that he might have of living in Juarez, let's say, wouldn't be based on his familial association. It would just be just anybody who lives there is potentially subject to violence by the cartels, right? Well, it depends how you view the cartels. They're like another government. They keep a record of everything. They're very sophisticated. They're not just street fighters. They have records of who's who and who's going where and when and why. So they could very well be aware of his presence in Juarez or anywhere else in Mexico and seek retribution for the fact that his family is not agreeing to let them use their land for drug cultivation. So, therefore, I think that on two points this case must be remanded. Number one, both the board and the immigration judge did not make an analysis of the particularly serious crime element as required by the law, first of all in Francesco and later on in Delgado and in Alfonso. And many cases have been remanded by this court, back to the board and back to the immigration judge, for a factual analysis of all the things that go into a Francesco analysis of whether it was a particularly serious crime or not. And the thing is that in this case the judge cited a Ninth Circuit, an unpublished Ninth Circuit decision saying, okay, well, shooting a gun into the air is a, or shooting on a police officer is a particularly serious crime. But that was all he said about it. There was no analysis. And the BIA did not analyze it at all. They simply repeated the judge's decision with no analysis whatsoever of the facts involved. And the thing is, particularly serious crime is a very onerous decision. It strips someone of all their rights. Well, I don't understand quite. If at the time of the plea, for whatever reason, maybe as part of an implicit plea bargain or whatever to avoid a more serious charge, he says, you may find me guilty. I plead nolo contendere, and so you can enter a judgment that I assaulted a police officer. The, why isn't he bound by that? And why isn't that a particularly serious offense? Well, he didn't say that. He entered a nolo contendere. What it means to enter it is you're bound by the terms of the conviction. And his lawyer undoubtedly explained that to him. I'm not sure that happened. Well. At any rate, he was very young. He was 19. His, and the immigrant, you have to remember, the immigration judge actually heard him on what happened there. He said he was in some sort of street altercation at something that was happening with kids, basically, on the street. There was a fight, and he shot a gun into the air, basically to defend himself. Well, he also said sometimes he thought that a police officer was there. Sometimes he didn't remember the police officer being there. He did say he fired the gun in the air, but I think his testimony is not as clear as you say it is. Your Honor, he never said that he thought a police officer was there. In the narrative between him and the judge, he says that there was no police officer there and that he didn't shoot at a police officer. Well, on page 203, there's a question, was the victim a police officer or a firefighter? And his answer was yes. And later he corrects it. Well, I understand that he later says something different, but he does at one point say, yes, the victim was a police officer. Right, but that was just in response to the nature of the charge, not in response to the actual facts of what happened, which he explained. He did explain that. And the judge took him at his word. I come back to the – maybe I'm just missing something here. You can explain it to me. At the time of the plea, he didn't say to the judge there, oh, I just shot in the air, because, of course, then the judge would not have been able to accept his plea to assaulting a police officer. So he said, no, I am prepared to be bound to a conviction for assaulting a police officer. What does it matter what he said years later? Well, he never actually gave testimony during the criminal trial. There was no trial. It was just a plea bargain. I understand. He had every right to contest the count. And if he – in fact, if a jury had found that he had just shot in the air, he would not have been able to be convicted on the charge he was convicted of. But he chose otherwise. Well, in many circumstances, the defendant cannot afford to go to trial. I'm not sure of what happened here. I understand all those very unfortunate aspects of our legal system, and they are not to be taken lightly. They are very serious problems. But nevertheless, isn't it the law that if you plead nola contendere to a charge that says you did X, then that is a final determination that you did X? Yes, sir, that is. On the other hand, the definition of particularly serious crime is so serious and so punitive that the judges are directed by this court to definitely analyze all the aspects that go into a conviction and labeling it before labeling it a particularly serious crime. And I believe in this case that analysis simply did not take place, either by the immigration judge who cited an unpublished decision and by the Board of Immigration Appeals who simply repeated the judge's decision with no analysis whatsoever. Okay. We'll give you a minute for rebuttal. You're well over your time. Let's hear from the government now. Thank you, Your Honor. Thank you. Whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Kosei Ugamori, and I represent the United States Attorney General in this case. This petition for review should be denied for two reasons. First, the Board reasonably determined that petitioner's conviction for assault with a deadly weapon constitutes a particularly serious crime. And second, substantial evidence supports the determination that petitioner failed to demonstrate that he would more likely than not be tortured by or at the acquiescence of the Mexican government. The conviction at issue in this case, as identified by the immigration judge and the Board, is actually 245A1, which is assault with a deadly weapon that is not a firearm or by means of force likely to cause great bodily injury. The Board and the immigration judge identified 245A1 as potentially a particularly serious crime, which is according to the framework. And thereafter considered the facts and circumstances of the crime, namely that he had counsel at the time of the plea, that he had pled to 245A1, although he was initially charged with the more serious 245D1, which is assault with a firearm upon a peace officer. And the Board also considered his explanation that he shot into the air, that nobody was hurt, and that he was imposed a sentence of four years imprisonment. In addition to that, the Board also considered the record, specifically the transcripts, where the petitioner specifically spoke about the circumstances of the conviction. Can I ask this? Did the immigration judge, as your opponent has said, basically accept the petitioner's account of what happened as true? Did he take him at his word that that is really what that was, the criminal conduct underlying this conviction? It appears so, Your Honor. The only adverse credibility determination that was made is with respect to the call about the threat relating to the cat protection. Okay. So if that's true, then both of my colleagues have kind of emphasized the seeming seriousness of firing at a police officer. But it seems to me that is absolutely irrelevant then to the analysis. The analysis that we have to conduct in terms of – and it's not a categorical analysis. It's not – you don't just say, oh, you were convicted of this particular offense. Boy, that sounds serious. You're done. You then have to dig into the actual underlying facts. And it sounds to me as if you're saying the immigration judge, given that he didn't find the petitioner not credible, was required to do the analysis on the basis of the – I was involved in some kind of altercation. I was trying to defend myself. I fired into the air. Nobody was injured and nobody really was at risk of injury. And if all of that's true, then I guess I don't understand why this conviction should be deemed a particularly serious offense, particularly if we're able to take into account that he engaged in this conduct when he was 19 and he has a history of not engaging in any violent conduct since then for, like, 30 years or 25 years maybe. Right. Well, first and foremost, Your Honor, under this court's precedent, for example, in Albinando Hernandez v. Holder decided by this court in 2015, the court does not reweigh the facts. The court just reviews whether the appropriate factors were considered, and that's really the end of the analysis. So if the board and the immigration judge properly considered the nature of the elements, the facts and circumstances, and the sentence imposed, then it's not an abuse of discretion. Well, I grant you that. But when I look at the I.J.'s, I'm looking at page 6 of the I.J.'s decision, AR 109, that's really the sum and substance of the so-called analysis you just referred to, right? And I read the I.J. as basically treating the particularly serious offense analysis as though it's some kind of a categorical approach, and it's definitely not. There's no discussion of the specific facts as recounted by the petitioner and an explanation for why that set of facts shows that, as our decision in Alfonso's says, that he is likely to be a danger to society given what he did when he was 19. There's no discussion of that. Well, the issue is not about future dangerousness. That is what our court said in Alfonso's. That's the whole point of engaging in this very fact-specific analysis, is to determine whether the nature of the offense shows that this person is in fact going to be deemed a danger. That's absolutely correct, Your Honor. It's the nature of the offense. It's the inherent dangerousness of the action itself, which raises the unrebuttable presumption that there's a likelihood of future dangerousness. Right, and I'm saying if, in fact, the nature of the offense here involved a person who was being assaulted by someone else who was armed and to defend themselves and defuse the situation, fired a single shot in the air, nobody's hurt, nobody was at risk of being hurt. I don't see any explanation by the IJ as to why that shows that this person is, in fact, should, in fact, be deemed a danger to society. So here is the immigration judge's decision, but more importantly, the board, the board's decision is more fulsome. No, it is not. It does nothing more than just parrot. It actually doesn't even do that. It just basically refers to what the IJ said. So we have to go to the IJ's decision and look at, point me to the language you want me to look at. Okay, so the board says he was charged with 245-D1 but pled to 245-A1. That's something the IJ did not say. The board also said that he had counsel at the time of the plea, something the IJ did not say. And the board also noted that he fired into the air and that nobody was hurt. That's also, I believe, what the IJ said was a firearm was discharged. All you are doing is saying, because this is all that's in the BIA's decision, they just described the facts, a purely descriptive enterprise, and then engaged in zero analysis. All they said is that the IJ concluded this and we agree. So then we have to go to the IJ's decision for any kind of analysis because there is zero analysis in the BIA's decision. So show me in the IJ's decision where there's analysis of the specific facts as recounted by the petitioner. First, I respectfully disagree. The board does include additional facts that are not contained in the IJ. But to answer Your Honor's question, the immigration judge at page 44 of the AR does go through the proper analysis. First, it cites to an unpublished decision, which talks about section 245-A1, which is assault with a deadly weapon that is not a firearm. So it follows a framework that is the elements of the conviction has to first potentially bring it into this sphere of a particularly serious crime. So that's the first step. And now the immigration judge next talks about the imposition of the sentence, which is four years, and furthermore talks about the firearm being discharged. Now, the firearm being discharged is not an element of the offense. Recall that section 245-A1 is assault with a deadly weapon. That is not a firearm. Counsel, I thought you put in your brief that even though the IJ and the BIA cited the ADW statute, I thought you put in your brief that the government believed the petitioner most likely was convicted of the crime that's reflected on the judgment, which is the assault on a police officer. Is the government changing its view of that? No, Your Honor. So the board identified 245-A1. So the government believes that the board did not err in identifying 245-A1. But even if the actual conviction were 245-D1, that would be harmless error because 245-D1 is the more serious offense. No, I understand that. What's the government's position of what crime the petitioner was actually convicted of? With respect to actual conviction, at this time, I believe the focus is what the board relied on. What the board relied on was 245-A1. I understand that, but I'd like to know what the government's position is as to what crime, if the government has one, of whether the petitioner was convicted of the police officer assault or the assault with a deadly weapon that didn't necessarily involve a police officer. I don't mean to not answer the question, but the government's position is we're defending the board's decision in this case. Now, there is evidence, lots of evidence. This is not a matter that should be in dispute. It's a judgment. There's presumably a transcript of the plea, but that doesn't appear, I think, in the record before us. But there's a judgment, and whatever the judgment shows is the answer, right? No one can vary from the judgment. You may be right that there was an error and it was a harmless error, but ultimately the question is what the judgment was, yes? How can that be a matter even remotely in dispute? The only reason, Your Honor, is because the plea agreement specifically mentions 245-A1, and so the board did not err in relying on the plea agreement, which identifies a lesser offense. So you think the judgment may be wrong? There's a possibility, however. Which the transcript would have presumably clarified, but no one bothered to go look at the transcript as near as I can tell, right? No, Your Honor, there is not, but there's lots of evidence as far as 245-D1 being the actual conviction. First of all, it's not contested by the petitioner. The abstract of judgment also mentions 245-D1. Perhaps the handwritten 245-A1 in the plea agreement was error. That could be the case, Your Honor, but to the extent the board identified 245-A1, the board did not err, and if it did, it was harmless, Your Honor. So as far as the acquiescence and the likelihood of torture, the petitioner had testified in his claim that he would be harmed because of his family. His family continues to live there. Even the families who were actually harmed, it wasn't only them who were targeted. There were other people targeted during both of those incidents, and their families continue to live there without harm. He also lived there without harm. And also there's an article reporting specifically on Uncle Angel Gonzalez's incident in which the assistant attorney general was involved, and also there was a forensic analysis of the bloodstains and that some obtaining declarations, and that there was a serious investigation that underwent there. And it is this Court's settled rule that ineffectiveness in policing or inability to prevent criminals or to bring them to justice does not establish acquiescence. Thank you. Thank you, counsel. Let's put a minute on the clock for rebuttal. Thanks. Thank you, Your Honor. I'm referring to the judge's decision, which is on page 119 of the CAR. And he says, in this case the respondent was sentenced to four years in prison for an event where basically the respondent had a firearm that was discharged and contributed to the conviction. Under the proper nature of the conviction, the underlying facts and circumstances in the sentence imposed, the Court must find that it's a particularly serious crime. However, the Court doesn't have to find that because, in this case, the facts are that the judge found that the respondent was credible when he said he just fired a gun into the air. No one was hurt. There was no police officer hurt. There's no evidence of anyone being hurt. And as far as the government's argument just now as far as who was in Mexico. How would the judge be able to make a determination of whether that was credible or incredible given that there's no one there from the other side, so to speak. The prosecution was long since concluded. So I understand that he did not make a determination that it was incredible, but I'm not totally sure how much weight we should give to that that years afterwards, the guy says what really happened was this. And how possibly can the immigration judge meaningfully address that when there's no one from the prosecution there? I understand your opinion, Your Honor, but... Oh, I don't have any opinions. I'm just asking questions. Yeah. Well, in this case, the police officer could have gone further if he was injured. It could have been a much more serious case. It could have been an attempted murder case if he had shot a police officer. No one was harmed. There is no record in the evidence anywhere of anyone ever being harmed. And just one more point, if I may. As far as what the government said about the family living in Mexico, it's only one person, perhaps two, that live in Mexico. This is a large family. They all live here. They all have green cards or they're citizens. There's only maybe two farmer people, I think an aunt named Josefina and perhaps another gentleman who travels back and forth to tend to the farm. Otherwise, all the family members live in the United States legally. Thank you. Okay. Thank you, counsel. Case just argued as submitted.
judges: Watford, Rakoff, Bennett